**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DANIEL WASHINGTON,

        Petitioner,                   Case Number: 06-CV-10975

v.                                   HONORABLE DENISE PAGE HOOD

THOMAS M. BIRKETT,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**I.    INTRODUCTION**

Petitioner Daniel Washington has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, a state inmate who is currently incarcerated at Camp Lehman in Grayling, Michigan, challenges his convictions for carrying a concealed weapon, felon in possession of a firearm, and possession of a firearm during the commission of a felony. Respondent has filed an Answer in Opposition to Petition for Writ of Habeas Corpus. For the reasons set forth below, the Court denies the petition.

Petitioner's conviction arises from an incident that occurred in the City of Detroit on July 1, 2003. Detroit Police Officer Gregory Robson testified that, on that date, at approximately 2:30 p.m., he was driving his patrol car on Indiana Street when he saw a group of men standing on the street and smelled marijuana. He stopped the patrol car and observed Petitioner move away from the group. Officer Robson exited his patrol car and observed Petitioner walk to a parked vehicle. Petitioner reached his hand into his pocket, retrieved a dark-colored handgun, and threw it under the truck. Officer Robson called for Petitiner to approach the patrol car,

which Petitiner did. Officer Robson's partner placed Petitioner in handcuffs while Officer Robson retrieved the weapon, a .25 caliber automatic. Officer Robson asked Petitioner whether he had a concealed weapon permit. Petitioner replied that he did not.

Officer Robson's partner, Jelani Jones testified that he was working with Officer Robson on the day Petitioner was arrested. He did not observe the gun being placed under the vehicle.

The parties stipulated that Petitioner had previously been convicted of a specified felony and was ineligible to carry a firearm.

Petitioner did not testify in his own defense.

## II. FACTS

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of carrying a concealed weapon, felon in possession of a firearm, and possession of a firearm while committing a felony. On November 6, 2003, he was sentenced to five years imprisonment for the felony-firearm conviction, and three years probation for the carrying a concealed weapon and felon-in-possession convictions.

Petitioner filed a motion for a new trial in the trial court on the ground that his trial attorney was ineffective. The trial court held a hearing pursuant to *People v. Ginther*, 465 Mich. 575 (2002), following which the trial court found counsel was not ineffective.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

    I.    Whether the defendant-appellant was denied a fair trial due to the ineffective assistance of counsel, and the trial court erred in denying defendant-appellant's motion for a new trial on this ground?

    II.    Whether the prosecutor improperly failed to list res gestae witnesses known to law enforcement, and the trial court erred in denying defendant-appellant's motion

for a new trial on this ground?

    III.    Whether the trial court erred in allowing defendant-appellant's in-custody statements to be used at trial, and erred in failing to grant the motion for new trial on this ground?

    IV.    Whether defendant-appellant was denied a fair trial due to the cumulative errors in this matter, and the trial court erred in denying defendant-appellant's motion for a new trial on this ground?

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Washington*, No. 252540 (Mich. Ct. App. June 14, 2005).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised on direct review in state court. The Michigan Supreme Court denied leave to appeal. *People v. Washington*, No. 129105 (Mich. Dec. 5, 2005).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the following claims:

    I.    Petitioner was denied his Sixth Amendment right to the effective assistance of trial counsel because his attorney did not interview or subpoena witnesses.

    II.    Petitioner was denied his Fourteenth Amendment right to a fair trial where the prosecutor failed to list all known res gestae witnesses.

    III.    Petitioner was denied his Fifth and Fourteenth Amendment rights under the United States Constitution where the court's failure to suppress his statements given without the warnings required under *Miranda v Arizona*.

    IV.    Petitioner is entitled to a new trial due to the cumulative errors which denied him a fair trial under the Fourteenth Amendment.

## III.    STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

4

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11.

## IV. ANALYSIS

### A. Ineffective Assistance of Counsel

Petitioner claims that his trial attorney was ineffective in failing to investigate and subpoena two witnesses, Christopher Bibb and Lisa Barksdale, who, Petitioner claims, would have offered "plausible defenses." Petitioner's brief at 5. Specifically, Petitioner states that both Bibb and Barksdale would have testified that they saw an individual, who was not Petitioner, place a gun under the vehicle.

Petitioner moved for a new trial on the basis of ineffective assistance of counsel in the trial court. The trial court conducted an evidentiary hearing pursuant to *People v. Ginther*, 465 Mich. 575 (2002), to address Petitioner's ineffective assistance of counsel claim.

5

Petitioner's trial attorney, James Daniel, testified at the *Ginther* hearing. He testified that Bibb and Barksdale were both listed on his witness list, but he met with neither of them prior to trial nor did he subpoena either of them. Daniel testified that Petitioner advised him that both witnesses would testify that he had not possessed the gun. Daniel did not subpoena the witnesses because Petitioner assured him that they would appear at his request. On the day trial commenced, Daniel and Petitioner telephoned both witnesses. Barksdale indicated that she was too tired to appear for trial and Bibb indicated that he had a transportation problem. During the lunch break, Daniel sent Petitioner to retrieve Bibb and bring him to the courthouse to testify. Petitioner reported back to Daniel that Bibb refused to accompany him to the courthouse. Daniel testified that he did not make any other attempts to secure the witnesses' testimony because he felt that their reluctance to testify indicated an unwillingness to give testimony favorable to the defense. He also did not want to secure Bibb's presence because he was concerned that doing so would suborn perjury. Petitioner told Daniel that Bibb would testify that Bibb possessed the gun; however, during prior conversations with Petitioner, Petitioner had told Daniel that, if the gun were dusted for fingerprints, Petitioner's fingerprints likely would be found. Daniel concluded that this meant his client had possession of the firearm.

Petitioner testified that he did not tell his attorney that his fingerprints would be found on the gun or that he ever possessed the gun. He also denied telling his attorney that he would arrange for Bibb's and Barksdale's presence at trial.

Christopher Bibb testified that, sometime in July 2003, he was walking down Indiana Street when he saw a group of five or six men talking. He recognized Petitioner as one of the men and stopped to talk with him. While he was talking to Petitioner, Bibb saw a police car turn

6

a corner and begin driving down Indiana Street. As the police car was approaching, Bibb saw a "dark-skinned, tall skinny" man throw a gun under a truck. Tr., 7/23/04 at 10. Bibb said this individual threw the gun under the vehicle as the police were turning the corner onto Indiana Street, approximately two blocks from where he stood. Bibb testified that he was already walking away from the scene by the time the patrol car approached the group. He stated that he was never contacted by Petitioner's attorney prior to trial.

The trial court held that counsel was not ineffective in failing to subpoena the witnesses, reasoning, in relevant part:

> It is reasonable to expect counsel to investigate and speak with perspective [sic] witnesses. . . . But the failure to call witnesses constitutes ineffective assistance of counsel only if the defendant is deprived of a substantial defense. . . .
>
> The Court finds that the testimony of counsel at the *Ginther* hearing to be truthful. The Court had an opportunity to observe the demeanor of all the witnesses who testified at trial. The Court does not find the testimony of either Bibb nor the defendant to be persuasive.
>
> The trial attorney was confronted with the fact that the defendant possessed the gun. And that's the reasonable inference that the attorney got from when he said to him point blank, . . . if I have [the gun] examined are your prints going to be on there? and his saying – . . . yes, maybe, probably; any way you look at that, counsel knows that if he proceeds to get the gun printed, . . . and the prints prove positive for his own client, that his case becomes substantially weaker. . . .
>
> The defendant did tell his attorney that two witnesses should be called in his defense. The defendant said that they would voluntarily appear at trial. . . .
>
> Trial counsel is not thus just faced with the failure to talk to the witnesses, but he was also faced with the dilemma of presenting possible perjured testimony. And that, of course, is exactly what counsel said at the *Ginther* hearing. Or he could proceed without that testimony and elected *de facto* not to seek the assistance of the Court to compel the attendance of either Bibb nor Barksdale. And, of course, to seek the attendance and compel witnesses who are unfavorable and – of course, also runs the risk of having . . . the prosecutor talking to them and then presenting unfavorable testimony, runs quite a risk.

7

Under those circumstances, faced with what the defendant had admitted to his attorney and facing the ethical dilemma that he would have been presented as he testified to at trial, the failure to present those witnesses, in the Court's opinion, does not rise to the level of ineffective assistance of counsel.

* * *

Now, while granted all the case law [and] common sense dictate it's better for that attorney to learn it firsthand, under the circumstances of the case – and that's what the case law requires me to do, is look at all the circumstances, not at isolated facts – I cannot say that it is ineffective not to call Bibb for several reasons.

Bibb says he saw someone else holding the gun, not the defendant. Bibb left before the police came, so Bibb was not present at the scene at the time of the arrest. He can add nothing to the arrest. On the other hand, Bibb's testimony corroborates exactly what the police said happened, with only the identity of the perpetrator being different. Otherwise the facts were totally what Bibb said. . . [Bibb's testimony] corroborates the police's testimony to a tee except for one thing; and that, of course, being the identity of the person who possessed and kicked the gun. Bibb was not present by his own admission when the police came up and saw that.

* * *

Now while the failure to investigate and failure to call witnesses at trial are both grounds for ineffective assistance of counsel, they have to be resolved by the facts and the circumstances of each particular case . . . . But, the standard is not, if you don't do that it's . . . an automatic ground of ineffective assistance. . . .

The facts of this case do not turn on the failure to talk and present the testimony of Bibb, but rather knowing counsel in this case didn't do that, whether to present testimony that the defense attorney had reason to believe may be perjury based upon a conversation he had with his own client. That reason came from the defendant's attorney's investigation and conversation with his own client.

. . . [W]hile the defendant did not expressly state the fact to his attorney, I had the gun and I kicked it under the car . . . that's the only logical and reasonable inference that the Court thinks can be gleaned from that statement – that he possessed the gun. . . .

Based upon the above, together with the fact that Bibbs did not see the transaction but left before the police even arrived at the scene, the Court cannot conclude that the failure to call Bibb to testify amounts to ineffective assistance of counsel, as

8

> that term is defined by law.
>
> . . . Bibb testified that he didn't see the defendant with the gun but [saw] another person with it, but left before the police arrived. The police said that that occurred as they were on the scene.
>
> * * *
>
> This record does not contain any evidence that the attorney should have presented Barksdale as a witness either. . . .
>
> Although it is sound practice to interview the witnesses, it is not ineffective assistance of counsel to fail to present the testimony of Bibb as a witness in the context of this case.
>
> The defendant has not met his burden to establish ineffective assistance of counsel, as that term is defined in *Strickland* and *Pickens* . . .

Tr., 12/3/04, pp. 10-21.

The Michigan Court of Appeals affirmed the trial court's conclusion that counsel was not ineffective in failing to subpoena Barksdale and Bibb. First, with respect to Barksdale, the court concluded that Petitioner presented no evidence, other than his own testimony, regarding how she would have testified at trial. Second, the court deferred to the trial court's determination that counsel's statement that Petitiner told him he would secure Bibb's presence was credible and Petitioner's testimony to the contrary was not. The court recognized that it would have been reasonable for counsel to subpoena Bibb prior to trial, but also recognized that Petitioner has an obligation to assist in his own defense and it was reasonable for counsel to rely on Petitioner's representations that he would secure the presence of Bibb. The court concluded that, based upon the circumstances of this case, it was not unreasonable for counsel to fail to subpoena Bibb.

This Court agrees with the state courts' conclusions that, while it would have been prudent for counsel to subpoena Bibb, it was not unreasonable for him to rely on Petitioner's

9

assurances that he would secure Bibb's presence for trial. By the time trial commenced and it became clear to counsel that Bibb's testimony was not inevitable, it also became clear to counsel that Bibb's testimony might prove more harmful than beneficial to the defense. First, counsel believed that Bibb might perjure himself. Second, counsel viewed Bibb's reluctance to testify as indicative that his testimony would not be favorable. Moreover, the trial court, which had the benefit of observing Bibb's demeanor during his *Ginther* hearing testimony, found Bibb's testimony that an unidentified man, who was not Petitioner, threw the gun under the vehicle, not to be credible. In addition, the trial court found that Bibb's testimony failed to offset the testimony of the two police officers who stated that they observed Petitioner throw the gun under the vehicle. Based upon all of these considerations, the Court concludes that counsel was not ineffective in failing to subpoena Bibb and that Petitiner failed to show that he suffered prejudice from counsel's failure to do so. Accordingly, habeas relief will not be granted on this claim.

### B. *Res Gestae* Witnesses

Second, Petitioner argues that he was denied his right to a fair trial when the prosecutor failed to list all known *res gestae* witnesses, in violation of Mich. Comp. Laws §767.40a.

This presents a question of state law. It is well-established that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (*quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Petitioner's claim regarding an alleged violation of Mich. Comp. Laws § 767.40a, therefore, is not cognizable on habeas corpus. *Accord Bailey v. Smith*, 2008 WL 2607830, * 2 (E.D. Mich. June 30, 2008).

### C. *Miranda* Violation

Petitioner argues that he is entitled to habeas corpus relief because his response to the

police officer's question regarding whether he had a concealed weapon permit was improperly admitted where it was obtained in violation of his rights pursuant to *Miranda v. Arizona*, 364 U.S. 426 (1966).

In *Miranda*, the Supreme Court established that certain procedural safeguards must be employed in the context of a custodial interrogation to protect a defendant's Fifth Amendment privilege against self-incrimination. *Miranda*, 384 U.S. at 444. Those safeguards require informing a defendant "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires", or giving other equivalent warnings. *Id.* at 479. These procedural safeguards are "required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). With respect to what constitutes interrogation warranting *Miranda* safeguards, the Supreme Court has held:

> "Interrogation," as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself. [footnote omitted]
>
> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response [footnote omitted] from the suspect. . . .

*Id.* at 300-01.

The Michigan Court of Appeals held that Petitioner's statement was the product of a custodial interrogation and, therefore, he should have been advised of his *Miranda* rights prior to

11

the interrogation. However, the court of appeals further held that the error was harmless beyond a reasonable doubt. The state court reasoned that there was no reasonable probability that Officer Robson's testimony regarding Petitioner's statement influenced the jury's verdict. Petitioner's statement that he did not have a concealed weapon permit did not constitute an admission that he had possessed the gun that was under the vehicle. This statement did not render Officer Robson's testimony that he observed Petitioner place the gun under the vehicle any more or less credible. *Washington*, slip op. at 5.

Admission of a statement in violation of *Miranda* is subject to harmless-error analysis. *Arizona v. Fulminante*, 499 U.S. 279, 308 (1991). *See also* Atkins v. Booker, 2006 WL 3086926, * 3 (E.D. Mich. Oct. 30, 2006) (applying harmless-error analysis to habeas petitioner's claim that he did not voluntarily waive his *Miranda* rights). In a habeas corpus proceeding, to determine whether a constitutional trial error is harmless, a federal court must decide whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), *quoting Kotteakos v. U.S.*, 328 U.S. 750, 776 (1946). "This standard reflects the 'presumption of finality and legality' that attaches to a conviction at the conclusion of direct review." *Calderon v. Coleman*, 525 U.S. 141, 145 (1998), *quoting Brecht*, 507 U.S. at 633. "It protects the State's sovereign interest in punishing offenders and its good-faith attempts to honor constitutional rights, . . . while ensuring that the extraordinary remedy of habeas corpus is available to those whom society has grievously wronged." *Id.* (internal quotations omitted). A federal court on habeas review must apply the *Brecht* harmless-error standard, rather than the "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California*, 386 U.S. 18 (1967), even where the state court did not

recognize the error and review for harmless beyond reasonable doubt under *Chapman*. *Fry v. Pliler*, 127 S.Ct. 2321, 2326-27 (2007).

The Court holds that the state court's conclusion that the improper admission of Petitioner's statement did not influence the verdict is well-reasoned and supported by the record. Accordingly, the Court holds that the state court's harmless error analysis was not contrary to or an unreasonable application of Supreme Court precedent.

### D. Cumulative Effect of Alleged Errors

In his final claim, Petitioner alleges that he was deprived of a fair trial because of cumulative error. The Sixth Circuit has expressed doubt that about the validity of the argument that cumulative errors may warrant habeas relief in the post-AEDPA era. *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief"); *Moore v. Parker,* 425 F.3d 250 (6th Cir. 2005) (same). Moreover, even if such a claim could merit habeas relief, the Court does not find that errors were committed when considered separately or together that abridged Petitioner's constitutional rights. Petitioner is not entitled to habeas relief on his cumulative errors claim.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

                                            S/Denise Page Hood
                                            Denise Page Hood
                                            United States District Judge

Dated: July 23, 2008

     I hereby certify that a copy of the foregoing document was served upon Daniel Washington, Reg. No. 361350, Camp Lehman, 5135 Hartwick Pines Rd., Grayling, MI 49738 and counsel of record on July 23, 2008, by electronic and/or ordinary mail.

                                            S/William F. Lewis
                                            Case Manager